**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| DAVID C. HENDERSON, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>REMINGTON ARMS COMPANY, LLC., CASCADE CARTRIDGE, INC. A/K/A CCI AMMUNITION<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 3:12-CV-00322<br><br>Judge Jane Boyle |

**DEFENDANT REMINGTON ARMS COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO TRANSFER**

# TABLE OF CONTENTS

BACKGROUND ..... 1

A. *Maxwell* Action ..... 2

B. Connection to North Carolina ..... 3

C. Significant Overlap between Maxwell and This Case ..... 3

ARGUMENT AND AUTHORITIES ..... 4

A. Under the "First-to-File" Rule, This Case Should Be Transferred to the Middle District of North Carolina. ..... 5

B. This Action Should Be Transferred to the Middle District of North Carolina Pursuant to 28 U.S.C. § 1404(a). ..... 7

1. Mr. Henderson Could Have Brought This Action In The Middle District of North Carolina. ..... 8

2. The Balance of Public and Private Interest Factors Call for the Transfer of this Action to the Middle District of North Carolina. ..... 8

a. Private Interest Factors ..... 8

b. Public Interest Factors. ..... 11

CONCLUSION ..... 13

# TABLE OF AUTHORITIES

**CASES**

*Abramov v. Otis Elevator Co.*, No. 11-CV-440, 2011 WL 5081560 (N.D. Tex. Oct. 25, 2011) ....................12

*AT&T Intellectual Prop. I, L.P. v. Airbiquity Inc.*, No. 08-cv-1637, 2009 WL 774350 (N.D. Tex. Mar. 24, 2009) ....................9, 10

*Balawajder v. Scott*, 160 F.3d 1066 (5th Cir.1999) ....................7

*Bank One, N.A. v. Euro-Alamo Invs., Inc.*, 211 F. Supp. 2d 808 (N.D. Tex. 2002) ....................7

*Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599 (5th Cir. 1999)....................5

*Compaq Computer Corp. v. Lapray*, 135 S.W.3d 657 (Tex. 2004) ....................12

*Cooper-McClintock v. United States*, No. 11-CV-1412, 2011 WL 5182259 (N.D. Tex. Oct. 31, 2011) ....................7, 8

*DataTreasury Corp. v. First Data Corp.*, 243 F. Supp. 2d 591 (N.D. Tex. 2003)....................11

*Donia v. Sears Holding Corp.*, No. 07CV2627, 2008 WL 2323533 (N.D. Ohio May 30, 2008)....................9

*Excentus Corp. v. Kroger Co.*, 3:10-CV-0483-B, 2010 WL 3606016 (N.D. Tex. Sept. 16, 2010)....................5, 6

*ExpressJet Airlines, Inc. v. RBC Capital Mkts. Corp.*, No. H–09–992, 2009 WL 2244468 (S.D. Tex. July 27, 2009)....................12

*Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co.*, 844 F. Supp. 1163 (S.D. Tex. 1994) ....................9

*In re Volkswagen AG*, 371 F.3d 201 (5th Cir. 2004) ....................7, 9, 11

*In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008)....................9

*Jarvis Christian Coll. v. Exxon Corp.*, 845 F.2d 523 (5th Cir. 1988)....................11

*Kerotest Manuf. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180 (1952) ....................7

*S.E.C. v. Rizvi*, No. 4:09–CV–371, 2010 WL 2949311 (E.D. Tex. July 2, 2010) ....................12

*Save Power v. Syntek Fin. Corp*, 121 F.3d 947 (5th Cir. 1997) ....................5, 6

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988)....................7

*USPG Portfolio Two, LLC v. John Hancock Real Estate Fin., Inc.*, No. 10-CV-2466, 2011 WL 1103372 (N.D. Tex. Mar. 25, 2011)....................7

*Van Dusen v. Barrack*, 376 U.S. 612 (1964)....................7

*Wayne County Employees' Ret. Sys. v. MGIC Inv. Corp.*, 604 F. Supp. 2d 969 (E.D. Mich. 2009)....................9

*West Gulf Mar. Ass'n v. ILA Deep Sea Local 24,* 751 F.2d 721 (5th Cir. 1985)....................5

**STATUTES**

28 U.S.C. § 1391....................8

28 U.S.C. § 1404(a)....................1, 5, 7, 8, 9, 11, 12, 13

Defendant, REMINGTON ARMS COMPANY, INC. ("Remington") respectfully submits this brief in support of its motion to transfer Civil Action No. 3:12-cv-00322 to the Middle District of North Carolina, where the *Maxwell v. Remington* matter is currently pending under Case Number 10-cv-00918.[1]

The *Maxwell* case was filed over one year before this case. Because the lawsuits involve an identical dispute with nearly identical parties, this action should be transferred to the Middle District of North Carolina under the "first-to-file" rule. Additionally this case should be transferred pursuant to 28 U.S.C. section 1404(a) because North Carolina is the more appropriate jurisdiction: it is where Remington's headquarters are located and where most, if not all, of the Remington employees who made decisions regarding the issues raised in Plaintiff's Complaint are located.

**BACKGROUND**

The Remington Model 597 semi-automatic rimfire rifle was at one time available in three calibers: .22 LR, .22 WM, and 17 HMR. In August 2009, Remington issued a "Safety Warning and Recall Notice" for Model 597 rifles chambered for 17 HMR ammunition (the "Model 597 17 HMR rifle"). *See* Safety Warning and Recall Notice, App. p. 1. The recall was prompted by notice received that month from co-defendant Cascade Cartridge, Inc., a/k/a CCI Ammunition ("CCI"), the only manufacturer of 17

---

[1] Defendant has also submitted a Motion to Transfer in the *Yancey v. Remington Arms Co., LLC, et al.*, matter, which is currently pending in the Middle District of Tennessee under Case Number 11-cv-00108. That action was filed on December 19, 2011 by the same attorneys as the present action with the same class definition, alleging nearly the same causes of action against the same defendants.

HMR ammunition, disavowing the caliber's suitability for use in any semi-automatic firearm on safety grounds. *Id*. ("not suitable for use in semi-automatic firearms").

According to the Complaint, Plaintiff was using his Model 597 rifle on November 19, 2011, when it allegedly malfunctioned. Compl. at ¶ 36. Plaintiff asserts two claims: breach of the Magnuson-Moss Warranty Act ("MMWA") and unjust enrichment. Remington's records indicate that, on November 23, 2011, Mr. Henderson reported to Remington that his "gun blew up" and told them that "he would like to write a column about it." *See* Henderson Product Service File, App. at 2-3.

### A. ***Maxwell* Action**

Following Remington's August 2009 recall of Model 597 17 HMR caliber rifles, Ronnie Maxwell initiated two lawsuits to turn these safety measures into a putative federal class action. The first lawsuit was filed in the Western District of Texas in April 2010 and was voluntarily dismissed by Mr. Maxwell in July of that same year. Complaint, *Maxwell v. Remington Arms Co., Inc.*, No. 10-cv-00270 (W.D. Tex. Apr. 12, 2010), App. at 4-8; Notice of Dismissal, *Maxwell v. Remington Arms Co., Inc.*, No. 10-cv-00270 (W.D. Tex. July 21, 2010), App. at. 9-10. Mr. Maxwell filed the second suit four months later in the Middle District of North Carolina, *see* Complaint, *Maxwell v. Remington Arms Co., Inc.*, No. 10-cv-00918 (M.D.N.C. Nov. 29, 2010), App. pp. 11-20, where a fully briefed Motion to Dismiss is pending.

### B. Connection to North Carolina

Remington's corporate headquarters are located in Madison, North Carolina. Compl. at ¶ 16. Remington witnesses, including employees in the marketing and consumer service departments, who would testify about the warranties, marketing of the Model 597 rifle, and the voluntary safety recall notice and warnings related to the Model 597 17 HMR caliber rifle and ammunition are all based in North Carolina. Declaration of Daniel Evans ("Decl. of Evans"), App. at 21-22 (¶ 4). Additionally, Remington's discussions, meetings, and planning regarding the marketing, warranties, and recall took place primarily in North Carolina, at Remington's offices. Decl. of Evans, App. at. 22 (¶ 6). Remington's documents and other materials regarding the voluntary safety recall of the Model 597 17 HMR rifle and ammunition, including marketing and warranty materials associated with the Model 597 rifles, are located primarily in North Carolina, at Remington's corporate headquarters. Decl. of Evans, App. at 22-3 (¶ 8).

### C. Significant Overlap between *Maxwell* and This Case

The issues and claims in the two actions significantly overlap, for numerous reasons:

- Both complaints assert the very same causes of action: breach of warranty under the Magnuson-Moss Warranty Act ("MMWA"), and unjust enrichment. *Compare* Compl. at ¶¶ 47-55 (MMWA), ¶¶ 56-62 (unjust enrichment), *with* App. at 29 (Amended Complaint, *Maxwell v. Remington Arms Co., Inc.*, 1:10-cv-00918-UA-LPA, ¶¶ 19-22 (MMWA) (M.D.N.C. Dec. 3, 2010)), App. at 30 (¶¶ 23-26 (unjust enrichment)).

- Both complaints cite representations allegedly made by Remington in the same marketing material concerning Model 597 17 HMR rifles. *Compare* Compl. at ¶ 21 *with* App. at 25 (5(a)-(c), 5(f)). And both complaints allege that these

representations were "false, misleading, and deceptive." Compl. at ¶ 22; App. at 27 (¶ 6).

- Both complaints assert that alleged inadequacies in the safety recall, which was responsibly undertaken by Defendants, have economically harmed the named plaintiffs and putative class members. *See* Compl. at ¶¶ 5-9, 29, 55, 59; App. at 27, 31 (¶¶ 8, 35-37).

The differences between the two actions are minimal. The putative class definitions, while not identical, are very similar. *Compare* Compl. at ¶¶ 10 ("class of all other similarly situated nationwide *purchasers* of Remington Model 597 17 HMR semi-automatic rifles and 17 HMR ammunition manufactured by CCI for use in the rifle") and 39 ("All residents . . . who . . . *owned* a Remington Model 597 .17 HMR semi-automatic rifle or any type of .17 HMR ammunition manufactured by CCI Ammunition that was purchased for use in that firearm") *with* App. at 28 (¶ 13) ("all persons who *purchased* one or more Remington 597 17 HMR semi-automatic rifles") (emphasis added). Additionally, while not named in the *Maxwell* action, CCI is the only manufacturer of 17 HMR ammunition, Decl. of Evans, App. at 22 (¶ 7), and its interests are also implicated in the *Maxwell* action despite the fact that it is not a named party.

Because of these and other overlapping issues and allegations, adjudicating the same issues with substantially the same parties in two different forums would be inefficient and a waste of judicial resources.

**ARGUMENT AND AUTHORITIES**

This case should be transferred to the Middle District of North Carolina pursuant to the "first-to-file" rule because that court has jurisdiction over a case involving the substantially same parties and substantially same issues. Alternatively, it should be

transferred pursuant to 28 U.S.C. section 1404(a) for the convenience of the parties and in the interests of justice.

### A. Under the "First-to-File" Rule, This Case Should Be Transferred to the Middle District of North Carolina.

This case involves nearly identical parties and issues as the *Maxwell* action, which was filed over one year before the present action. *See* Complaint, *Maxwell v. Remington Arms Co., Inc.*, No. 10-cv-00918 (M.D.N.C. Nov. 29, 2010), App. at 4-8; *see also* First Amended Complaint, *Maxwell v. Remington Arms Co., Inc.*, No. 10-cv-00918 (M.D.N.C. Dec. 3, 2010), App. at 24-35. It should be transferred to the Middle District of North Carolina pursuant to the first-to-file rule.

Under the first-to-file rule, "the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." *Save Power v. Syntek Fin. Corp*, 121 F.3d 947, 950 (5th Cir. 1997); *see also Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999); *West Gulf Mar. Ass'n v. ILA Deep Sea Local 24,* 751 F.2d 721, 729 (5th Cir. 1985). The parties and issues need not be precisely identical for the first-to-file rule to come into play; rather, "[t]he crucial inquiry is one of "substantial overlap." *Save Power*, 121 F.3d at 950 (internal quotation marks omitted); *Excentus Corp. v. Kroger Co.*, 3:10-CV-0483-B, 2010 WL 3606016, at *2 (N.D. Tex. Sept. 16, 2010) (Boyle, J.) ("the two actions must involve closely related questions or common subject matter") (citations omitted).

It would be prudent to transfer this action to North Carolina, where *Maxwell* is currently pending. The *Maxwell* action was filed over one year before the present action, and a motion to dismiss there has already been fully briefed. It would be inefficient to have both courts simultaneously adjudicate the same issues.

In addition, while not identical, the parties involved in the present action and *Maxwell* are substantially similar. Although the Plaintiff here has also asserted claims against the ammunition manufacturer, the first-to-file rule may apply where there is an additional defendant. *See, e.g.*, *Save Power*, 121 F.3d at 951 (complete identity of parties not required for transfer to be appropriate); *Excentus Corp.*, 2010 WL 3606016, at *3 ("the fact that there are additional parties . . . does not change the fundamental issue involved"). Further, while CCI is not a party in the *Maxwell* action, it is the only manufacturer of 17 HMR ammunition, and, as such, its interests are necessarily implicated in that action. *See* Decl. of Evans, App. at 22 (¶ 7).

Additionally, while Mr. Henderson is not a named plaintiff in the *Maxwell* action, he may be a member of the putative class sought to be certified there (and Mr. Maxwell may also be a member of the putative class here). The class definitions are very similar and likely to overlap significantly. The class sought to be certified in the *Maxwell* case consists of "all persons who purchased one or more Remington 597 17 HMR semi-automatic rifles." App. at 28 (¶ 13). The class sought to be certified in the present action consists of "[a]ll residents . . . who . . . owned a Remington Model 597 .17 HMR semi-automatic rifle or any type of .17 HMR ammunition manufactured by CCI Ammunition that was purchased for use in that firearm." Compl. at ¶ 39. In short, both plaintiffs are

trying to certify classes of consumers of Model 597 17 HMR rifles. *Compare* Compl. at ¶ 39 and App. at 28 (¶ 13).

Because of the overlap in issues and parties between these two matters, this case should be transferred to the Middle District of North Carolina under the first-to-file rule.

### B. This Action Should Be Transferred to the Middle District of North Carolina Pursuant to 28 U.S.C. § 1404(a).

A civil action may be transferred to any other district where it may have been brought originally "[f]or the convenience of parties and witnesses, [or] in the interest of justice." 28 U.S.C. § 1404(a). Whether to transfer an action is in the sound discretion of this Court. *See Kerotest Manuf. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84 (1952); *see also Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir.1999); *Cooper-McClintock v. United States*, No. 11-CV-1412, 2011 WL 5182259, at *1 (N.D. Tex. Oct. 31, 2011) (Boyle, J.). "The decision to transfer is made to prevent waste of time, energy, and money, and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Bank One, N.A. v. Euro-Alamo Invs., Inc.*, 211 F. Supp. 2d 808, 811 (N.D. Tex. 2002) (Fitzwater, J.); *see also Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

Determining whether to transfer a case is made on an individualized and case-by-case basis. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Courts evaluate private and public interest factors in determining whether to transfer an action, none of which, alone, is given dispositive weight. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004); *see also USPG Portfolio Two, LLC v. John Hancock Real Estate Fin., Inc.*,

No. 10-CV-2466, 2011 WL 1103372, at *2 (N.D. Tex. Mar. 25, 2011) (Fitzwater, J.). The balance of these public and private factors demonstrates that this case should be transferred to the Middle District of North Carolina.

**1. Mr. Henderson Could Have Brought This Action In The Middle District of North Carolina.**

A threshold requirement for transferring venue under section 1404(a) is that the action "might have been brought" in the transferee district. 28 U.S.C. § 1404(a). Venue is appropriate under 28 U.S.C. § 1391 in any judicial district in which a "substantial part of the events or omissions giving rise to the claim occurred." *See also Cooper-McClintock*, 2011 WL 5182259, at *1.

Here, Remington's headquarters are located in Rockingham County, North Carolina, which is within the Middle District of North Carolina. Decl. of Evans, App. at 21 (¶ 3). Most, if not all, of Remington's decisions regarding the warranties, marketing, and voluntary safety recall of the Model 597 17 HMR rifle and ammunition took place in that district as well. Decl. of Evans, App. at 22 (¶ 6). For these and other reasons, it is clear that this action could have been brought in the Middle District of North Carolina.

**2. The Balance of Public and Private Interest Factors Call for the Transfer of this Action to the Middle District of North Carolina.**

*a. Private Interest Factors*

In determining whether to transfer an action under section 1404, courts in the Fifth Circuit first consider a number of private factors:

> The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004).  Consideration of these private factors demonstrates that this case should be transferred to the Middle District of North Carolina.

The plaintiff's choice of forum is treated "as a burden of proof question" and is not considered an independent factor.  *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 n.10 (5th Cir. 2008) (plaintiffs' choice of venue "is not an independent factor within . . . the § 1404(a) analysis"); *AT&T Intellectual Prop. I, L.P. v. Airbiquity Inc.*, No. 08-cv-1637, 2009 WL 774350, at *1 (N.D. Tex. Mar. 24, 2009) (Lynn, J.) ("The plaintiff's choice of venue is not properly considered as an independent factor in the analysis, but it is entitled to deference."); *Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co.*, 844 F. Supp. 1163, 1165 (S.D. Tex. 1994).  In fact, here, it deserves limited weight.  Where a lawsuit is brought as a class action, the plaintiff's choice of forum is entitled to little deference.  *See Wayne County Employees' Ret. Sys. v. MGIC Inv. Corp.*, 604 F. Supp. 2d 969, 976 (E.D. Mich. 2009) (the "fact that this is a class action weakens the plaintiff's claim for deference to its choice of venue"); *Donia v. Sears Holding Corp.*, No. 07CV2627, 2008 WL 2323533, at *4 (N.D. Ohio May 30, 2008) ("the importance of the plaintiff's choice of forum is . . . diminished where the plaintiff has intentionally broadened the geographic scope of the action by seeking to certify a class").  Plaintiff has

chosen to posture this case as a nationwide putative class action, and his choice of forum is therefore entitled to little deference.

Remington's documents and other materials regarding the voluntary safety recall of the Model 597 17 HMR rifle and ammunition, including marketing and warranty materials associated with the Model 597 rifles, are located primarily in North Carolina, at Remington's corporate headquarters. Decl. of Evans, App. at 22-23 (¶ 8). "The Fifth Circuit [has] held that despite technological advances that [have] made the physical location of documents less significant, the location of sources of proof remains a meaningful factor in the transfer analysis." *AT&T*, 2009 WL 774350, at *2.

The convenience of witnesses and the parties favors transfer to the Middle District of North Carolina. Remington's corporate headquarters is in Madison, North Carolina. Compl. at ¶ 16. Remington witnesses, including employees in the marketing and consumer service departments, who would testify about the warranties, marketing of the Model 597 rifle, and the voluntary safety recall notice and warnings related to the Model 597 17 HMR caliber rifle and ammunition are all based in North Carolina. Decl. of Evans, App. at 21-22 (¶ 4). While CCI does not have any North Carolina connections, CCI is located in Idaho, and not in Texas. Compl. at ¶ 17. The Complaint's allegations do not suggest that there would be any witnesses apart from Plaintiff himself located in this district.

*b. Public Interest Factors*

Courts then consider a number of public interest factors in determining whether to transfer an action pursuant to section 1404(a):

> The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws [or] the application of foreign law.

*In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). These factors call for this case to be transferred to the Middle District of North Carolina.[2]

Analysis of these factors makes North Carolina the more appropriate venue, not Texas. Many courts have held that "the interest of justice" is a key factor in the section 1404(a) analysis and have found that, "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different district courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *DataTreasury Corp. v. First Data Corp.*, 243 F. Supp. 2d 591, 594 (N.D. Tex. 2003) (Kaplan, M.J.); *see also Jarvis Christian Coll. v. Exxon Corp.*, 845 F.2d 523, 529

[2] The relative docket congestion of each of the districts is equivocal. While the average number of cases per judge points to the Middle District of North Carolina, the median time from filing to disposition is lower in the Northern District of Texas. For the 12-month period ending September 30, 2011, the Middle District of North Carolina had 1,550 cases filed with an average of 388 cases per judgeship, whereas the Northern District of Texas had 6,197 cases filed with an average of 516 cases per judgeship. For that same period, the median time from filing to disposition for civil cases in the Northern District of Texas is 6.6 months, whereas it is 9.8 months for civil cases in the Middle District of North Carolina. *See* Federal Court Management Statistics, http://www.uscourts.gov (last visited March 18, 2012).

(5th Cir. 1988) (upholding transfer where other cases "involve[d] issues either identical, or substantially related, to the issues pending before the [transferor d]istrict."). A transfer would avoid the existence of multiple, identical cases pending in three different jurisdictions that would result in expensive duplicative discovery, parallel motion practices, and the possibility of inconsistent judgments. *See ExpressJet Airlines, Inc. v. RBC Capital Mkts. Corp.*, No. H–09–992, 2009 WL 2244468, at *14 (S.D. Tex. July 27, 2009) (granting motion to transfer on section 1404(a) grounds due to, *inter alia*, concerns for judicial economy).

Furthermore, North Carolina has a local interest this action because Remington's headquarters are within that jurisdiction and because certain decisions regarding the warranties, marketing, and voluntary safety recall of the Model 597 17 HMR rifle and ammunition also took place in that district. *See, e.g.*, *S.E.C. v. Rizvi*, No. 4:09–CV–371, 2010 WL 2949311, at *12 (E.D. Tex. July 2, 2010) (finding, in section 1404(a) analysis, that a district has an interest for in "businesses that operate within its jurisdiction"); *Abramov v. Otis Elevator Co.*, No. 11-CV-440, 2011 WL 5081560, at *4 (N.D. Tex. Oct. 25, 2011) (holding that the state in which the acts giving rise to the lawsuit occurred had a greater interest in the action).

Finally, neither of these venues is better suited to interpret the laws of all fifty states, <u>all</u> of which will apply in this putative nationwide class action because, pursuant to Texas' choice of law rules, the law of the state in which each consumer purchased, used, and stored his rifle would apply to this action. *See Compaq Computer Corp. v. Lapray*, 135 S.W.3d 657, 680-81 (Tex. 2004) (finding that the place of purchase and the location

of the subject matter would control the applicable law in a putative nationwide class action asserting breach of warranty claims).[3] While this Court would be more familiar with the Texas law that is likely to apply to Mr. Henderson's individual action against Remington, it is no more likely than the Middle District of North Carolina to be familiar with the laws that will apply to all of the absent class members in this action.

* * *

Because these and other factors under section 1404(a) point to a transfer, this case should be transferred to the Middle District of North Carolina.

## CONCLUSION

For all of the foregoing reasons, Defendant Remington respectfully requests that this Court transfer the instant action to the Middle District of North Carolina.

Respectfully submitted,

s/ James D. Jordan
James D. Jordan
Bar Number: 11012380
**Munsch Hardt Kopf & Harr, P.C.**
3800 Lincoln Plaza
500 North Akard Street
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Fax: (214) 978-4359
jjordan@munsch.com

[3] This motion does not address the suitability of claims such as those alleged here for class action treatment whether on a nationwide or state-by-state basis, nor does it address the Plaintiff's suitability as a class representative.

—Of Counsel—

Dale G. Wills
(*pro hac vice* application forthcoming)
James B. Vogts
(*pro hac vice* application forthcoming)
Andrew A. Lothson
(*pro hac vice* application forthcoming)
Swanson, Martin & Bell, LLP
330 North Wabash, Suite 3300
Chicago, Illinois 60611
Telephone:  (312)-321-9100
dwills@smbtrials.com
jvogts@smbtrials.com
alothson@smbtrials.com

**ATTORNEYS FOR DEFENDANT
REMINGTON ARMS COMPANY, LLC**

**CERTIFICATE OF SERVICE**

      On April 9, 2012 I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal rule of Civil Procedure 5 (b)(2).

                                      s/ James D. Jordan